Good morning, and welcome to the 11th Circuit. We'll call the first case, which is United States v. Gillis. Mr. Bashir. Thank you. May it please the Court. Good morning, Your Honors and Counsel. With the several issues before the Court, I'd like to first focus my attention on the solicitation to This question comes down to basic principles of statutory interpretation. Any court to look at the Elements Clause language, a felony that has as an element the use, attempted use, or threatened use of physical force, has concluded the categorical approach applies. And the Elements Clause in the solicitation statute is no different. So the question here constitutes federal kidnapping, because that is not what the solicitation statute requires. The sole question on this issue is whether federal kidnapping itself is a felony that has as an element the use, attempted use, or threatened use of physical force. And the Supreme Court has already definitively answered that question, no. It has told us that Congress intentionally drafted the federal kidnapping statute broadly to cover a wide variety of federal kidnappings, and that physical force, violence, or injury, harm to the victim is not an essential part of the offense. By design, specifically so that federal kidnapping can include a wide variety. In Chapman, Judge Anderson, the Supreme Court is quite clear that the essence and the gravamen, if you will, of the federal kidnapping statute is the use of either physical or mental restraint. It is very clear for over half a century the Supreme Court has, and every court to look at the federal kidnapping statute since then, whether it be the 7th Circuit, the 9th Circuit, the 5th Circuit, and even this Court's decision in Boone, has all reiterated Chapman's main principle that federal kidnapping includes either physical or mental restraint. And it did not equivocate. There is no mention at all that physical force is a requirement of the statute, for a very specific reason, because the historical context of where federal kidnapping emerges from is on the heels of perhaps the most infamous infant kidnapping in American history, the Lindbergh Kidnapping. This predecessor statute was called the Lindbergh Act. And the purpose of Congress using a wide variety of verbs and means by which kidnapping can occur is to cover an area of federal kidnapping of kidnapping where kidnappers could use non-physical means or mental deception or lure their victims across state line. And what Congress, the harm they were trying to seek, sought out, is to capture those type of kidnappers. See, what Congress was concerned with is we don't want the creative kidnapper to get away with this crime. I can understand that you can be lured by deception or, you know, you can be lured by mental processes into kidnapping or confinement. But our Boone case says that one of the elements of kidnapping is that the defendant necessarily has to have the intent to use physical force in case the deception fails. So why does that not mean that in our circuit some kind of physical force is required? The reason for that is because Boone, not to correct Your Honor, but Boone actually says the requirement is physical or mental restraint, citing back to Chatwin. So I agree Boone is on point and I would contend that Boone in fact supports entirely what we're saying because Boone is reiterating the principle of Chatwin. What Boone, and Boone discusses and uses the term force, so I can understand the precision of the... You're right about what Boone says. But, you know, we also have that doctrine that if the use of mental restraint in that context is far-fetched in a mere legal imagination, then we disregard it because it's not real world. It's hard for me to imagine when deception has failed what kind of mental psychological force could possibly be in the real world. I'm very glad you brought that up because I think that actually gets to the heart of the dispute here. And I point back again to Chatwin because this gets to the heart, I think, of the dispute here. There's a contention that what we are asserting is a hypothetical, if you will, that if the confinement fails, it's a far-fetched imagination. It's decidedly not that case because when we're talking about the reasonable probability of where the federal confinement, where that extends, the Supreme Court used the confinement example specifically to explain that confinement, if you have an individual who is incapable of being invigiled or decoyed, such as an infant, again going back to the very purpose of the statute, that victim does not even need to be aware of their confinement. So far from a hypothetical... Yes, but in the infant case, another element is the victim's inability to be aware of their confinement. The victim has to be held for ransom. And so it seems to me there's an implied threat to the health of the injury to the infant or to the people from whom there's the attempt to extort the ransom money. And Chatwin, and we can look directly to our jury instructions in this case, that could be the case. Thankfully, for Congress's purpose, the answer to that question is no. There does not need to be an implied threat. There does not need to be held for ransom. And I don't mean this as a hypothetical, but what Congress is actually saying is, suppose you do have that infant scenario and someone who's holding a child doesn't say, I'm going to harm your child if you don't give me a ransom or I'm going to keep your child, but just says, I want X amount of monies or you'll never see your child again. And if we were to show up at court and our defense was, well, I never actually threatened to harm the victim or I never threatened to harm the family, I'm quite confident our friends would either move to strike us from raising that defense or argue to the court, that's not a valid defense under the statute. There needs to be no threat. It's involuntariness or coercion. That is what Chatwin says specifically to that confinement. And this is just reading exactly what the Supreme Court- What about a situation where a relative who doesn't have custody of a child takes the child because he or she wants to have the child? Would that qualify? Yes, Your Honor. Yes, Your Honor. Meaning no harm to the child, but just wishes to take the child away from the other parent or- That is the essence of the crime. That's exactly what the Supreme Court is saying. So Judge Pryor, you're absolutely correct that the point of what the Supreme Court says, what our jury instructions track, involuntariness or coercion. And that involuntariness, coercion could be against the will of parents, could be against the will of another. It is by design that the kidnapping statute extends to this wide variety because- I have two record questions. I certainly understand your argument that we have to categorically look at the statute. We can't look at conduct. And my question is, I could not find any case that applies the categorical approach, Supreme Court case, to Section 373. Is that correct? The Supreme Court has not applied it to this statute. It has not applied it to this statute. I know about 924C. I promise you. I know about all the other statutes. So the Supreme Court's never applied it to this statute, the categorical approach. Okay. And the 11th Circuit has never applied it to this statute, the categorical approach. Yes, Your Honor. All right. And as I understand the indictment in this case, it did not include decoys and inveigles. It didn't charge those parts of the statute. There appears to be a variance, yes, Your Honor, of leaving those verbs out. Why is that a variance? They charged the conduct in the statute. They don't have to charge. They charged here a seizure of confinement and a kidnapping. They did not charge decoys or inveigles. The reason I say it's a variance is because it's narrowing the means. If we're talking about means versus means. It's not a variance. It's a variance from the statute. But it's not a variance in the case. Okay. Yes. That's all I'm saying. Okay. We're full agreement. Okay. So he was charged with that conduct here, those elements of the statute. Yes. Right. And so this statute is also unusual in that we're not looking for a definition somewhere else in another statute. We're looking at a single statute. Is that correct? Yes, Your Honor. Whereas in 924C, we have to go look at another crime defined in another statute. Correct? I'm not sure I... I mean, we have to go look for the crime of violence definition in another statute. Well, the 924C defines what it means to be a crime of violence. And here we have the elements clause. So it's the same language of using the... And it uses the same physical force language as well. And this is all in one count. We don't have to look at another count. We just have to look at this one count of the statute. Yes. And I see my time is short. No, you can keep answering the questions. You have to look at this one count of the statute. And why, compared to all the other cases where you had to look back, everything the district court needs to know about what this defendant did is in the record before the district court. Is that correct? Yes. Okay. And if I may, my time is up. I think this is a very important point because it's addressed in St. Hubert. So I really want to make sure I explain the contemporaneous conviction. And there's two quick points that I'll just make. One, and if you look back to the cases that are cited in St. Hubert Robinson from the Third Circuit, the key, even in the contemporaneous... In the D.C. Circuit. Yes. Which said this categorical approach, applying it this way, it doesn't make sense. If we are still looking at the text of the statute, the word element cannot be read out of that statute. So the inquiry at the end of the day is including an element. And from the previous discussion I was just having with Judge Anderson, even if you take the verbs invigil and decoy out, there is confinement. And the Supreme Court, without mincing words, and Boone says it as well, is clear. Confinement does not need to include physical force. Yes, but you also have to read into the language of the statute something that's not present in other statutes is, quote, engage in conduct. And twice it says in the statute, engage in conduct. And this statute is telling you, you're looking to see whether the conduct here, the conduct this defendant did, had an element of force. Why is that not a plausible, one possible, reasonable reading of the statute? May I please answer? The reason that that's not a plausible reading is because it would read out of the statute the phrase felony that has as an element the use or attempted use. The word felony would be taken out. If Judge Hall and I fully agree that the... Yes, but I'll engage in conduct constituting a felony that has. Well, all of this conduct in the statute is a felony. The felony is, the possessive phrase has applies to felony, the natural English reading of that phrase. If it is, if the statute, if Congress had intended the inquiry, the entire inquiry to be a conduct question, the statute would read to the effect conduct constituting So we have an issue of first impression. The phrase felony has as an element is a question well settled in the court. The conduct question here is the best analogy I can give you, Judge Hall. Just take 924C. There is a conduct question there too. Did the defendant use or possess in furtherance? That's for the jury. The pure question of law is, is the predicate offense a felony crime or violence? It's the same thing here. We're identifying the predicate crime of violence. If our opponent's argument is true, you could inconceivably take mail fraud or lying to a federal official, 1001, and put that before a jury and the government could argue. Last thing, you agree that in the seizing and combining, kidnapping, you have to have an and holds for ransom or reward. Is that an element and holds for ransom or reward? Is that an element of the statute? The statute reads as three different elements. And Boone and Chatwin is quite clear in our jury instruction. So you have an unlawful act or means element, a holding element, which several courts have said that holding element does not have a means of physical force, and a jurisdictional element. So you have three elements. And what Chatwin says is Everyone has to be holding for ransom or reward. Well, that's just one of the three. I know, but I'm just saying, so every kidnapping has to have holding for ransom or reward. Or some type of gain in some sort. Thank you. Yes, thank you, Your Honors. You'll have your full four minutes for rebuttal, Mr. Bashir. Thank you very much. May it please the Court, Michelle Taylor for the United States. Gillis solicited a violent He planned for the attackers to grab the victim in the early morning darkness, hood and blindfold her, rape and sexually torture her. That's the reality. That's the reality that was before the jury. That was the reality that was before the district court. And there's no reason when Section 373 directs courts to consider the conduct solicited for the court to put on those blinders that it wears in the categorical approach when it's trying to reconstruct some stale state conviction that happened decades ago. The Supreme Court explained in Mathis the reason why you apply the categorical approach under the ACCA is because we're concerned we have a variety of concerns. First, the Sixth Amendment concern. I understand that none of those concerns apply in the contemporaneous situation that we have and that we had in St. Hubert. But does not the McGuire case control us? No, Your Honor. The McGuire case was under 924C. And actually, 924C, although that is a contemporaneous sort of situation, and I do think the law is likely moving in the direction that this court suggested in St. Hubert, where we're going to distinguish between contemporaneous crimes charged in the same federal indictment and reconstructing sort of an archaeological excavation of prior convictions. You certainly should do that. But can we with McGuire? Well, one of the differences between the statutory language and McGuire, 924C, it talks about an offense that has as an element. 924C, even though the force clause is similar, doesn't have that language conduct constituting, which as Judge Hull pointed out is repeated twice here. So here we have language. Conduct doesn't have elements, right? Only the felony has elements. That's correct, Your Honor. But here, the starting point has to be the defendant's conduct. And then you then, like it's not irrelevant. We do have to then tie, because of the language has as an element, we have to tie the conduct then to an actual federal crime. So for instance, the defendant mentioned the mail. I'm not sure the conduct in this statute distinguishes McGuire, which was 924C, right? Yes, Your Honor. Doesn't 924C say something to the effect that it has to be used or carried or something like that? 924C uses the word an offense that has as an element, but here it's conduct constituting. And this language actually parallels the 7B1.1, the revocation of supervised release. That also talks about conduct constituting a crime of violence. And then it defines crime of violence by reference to the career offender guideline. So there you do again get that has as an element language from that definition. You're telling me that 924C and McGuire does not have any language that is comparable to the conduct language here? I think you might argue it's comparable, but you don't have the conduct constituting language, which I think is key. I think that's a statutory difference where I don't think McGuire controls. And this court, I guess conceivably could extend it, but I'd see no reason to extend what appears to be, as this court pointed out in Hubert, perhaps a mistaken view of the law already. This court was bound by . . . It was distinguished. It is just not involved in 373, but that doesn't really make sense if all the reasons in McGuire would also apply here. You see what I mean? Well, I think it would be an extension, because as Judge pointed out, this is an issue of first impression, so you're not bound by McGuire. And I see no reason to extend McGuire when all those reasons that required the categorical approach . . . We can say, even if the entirety of the rationale of McGuire applies with equal force here, let's assume there's something comparable to conduct in McGuire, even if all of the rationale applies with equal force, we can not follow it? I think that's correct. It's not binding because it's a different statute. What's the best case that says that? That doesn't make any sense, but the law doesn't always make sense. It ought to always make sense, but it doesn't. It would be an extension . . . Let me suggest the answer. You're only talking about an analytical approach here. You're not talking about the language of the statute. You're talking about an analytical approach, and it's whether you now apply it to another wholly independent statute that has materially different language. That's about what you have to argue. That's correct, Your Honor. It's not like it's some holding. The categorical approach is an analytical construct to try to look at whatever you're looking at. Here, in this situation, and I understand in McGuire, it's about whether it was used or carried during a crime of violence. This is materially different statutory language is what you have to argue because it refers to conduct twice, and you just have to read the statute. There's no need. Here, the indictment is directly there, and it's all on one count, so you just have to make those material. Whether they're . . . well, somebody buys it or doesn't buy it, that's the argument. I think that's correct, Your Honor. I think the . . . The holding is the result of the case, which, of course, is different here. The reasoning, the holding of a case includes the holding and the reasoning that was necessary to get to that holding. Here, the reasoning necessary to get to that holding in McGuire was this analytical approach. I guess, again, because it's a different statute . . . Do you have an answer to that? I'm sorry, that . . . Did I properly state what the holding of a case is? I think the holding of the case is what was necessary . . . Including the rationale that was necessary to reach that holding. Yes, I think that's correct, and so I think that the categorical approach application is binding as to 924C. This court had to apply it in St. Hubert, but it's not binding here because as Judge Hull pointed out, it's a different statute with different language. Ipsy-Dixy. I don't think we can find cases that say if it's a different statute, it's a different statute and we're not bound by the rationale. It may well be it's persuasive authority and you should follow it, but we're not . . . I mean, I think we have cases like that. It's a different statute, it's a different statute. There is materially different language here in the statute, so you'd have to look at a case and say, we have a different result here. I mean, that's the dilemma. We also have here . . . We know . . . It's actually, I think, an interesting issue and perhaps a difficult issue about whether enveiglement and decoy kidnappings would qualify . . . The difficult alternatives are off the table. The five physical forms of taking are the only ones that are before the court. I don't think that's right. And the Macklin case . . . Excuse me. I was just going to say that that only matters if we don't apply the categorical approach, right, the actual conduct in this case. No, I think it absolutely matters that we know that these were the only alternatives that conceivably could have formed the basis of the jury's verdict and the defendant has never argued on appeal that the enveiglement or decoy alternative should have been before the jury. In fact . . . If we're looking at the categorical approach, if we're applying the categorical approach, we're only looking at the elements of the crime, not what was charged, not what was in the jury instructions, not what the jury found, correct? That's correct. But under Mathis, when it's talking about what the elements are, it says what the jury necessarily agreed on. And here, we know the jury only could have agreed on the five physical takings because those other alternatives were never even before it. That's under the modified categorical approach. Well, in this case, we know that that's the only conceivable basis for the jury's verdict. So the whole notion of divisibility . . . The point is we never look at the indictment because if we're talking about the categorical approach, we're talking about what the statute says. And therefore, the fact that this particular indictment said, left out in vigilment, is irrelevant. Well, again, the categorical approach and the notion of divisibility is a useful notion when we're trying to reconstruct some prior 20 years ago stale state conviction and we have to discern what necessarily was the basis of the jury's finding. But now we're in the real world. And here in the real world, we know we can look at the jury instructions and we can look at the charging document and we know that the only takings that were before the jury were the five physical takings. And the Macklin case, which the defendant cites in the reply brief at one, actually is a really good sort of explanation of the different requirements of kidnapping. The five physical takings—seizing, confining, kidnapping, abducting, and carrying away—all  I don't see where you argued that this statute is divisible in your briefs. You don't argue that, do you? No, Your Honor. The defendant, in the opening brief, takes as a given that the least culpable conduct is kidnapping by confinement. He doesn't even attempt to argue that the inveiglement and decoy options are in play. And that's because he acknowledges in his opening brief that those alternatives weren't even before the jury. So he said the least culpable conduct is kidnapping by confinement. So we shouldn't even be talking about inveiglement and decoy. Those are off the table. They were off the table in the district court. They're off the table because he never argued that in his opening brief. Well, frankly, I think you're wrong on that. But even if you were right, confinement has precisely the same problems as inveiglement because somebody could be confined by deception or inveiglement. Well, as Your Honor pointed out, the application has to be plausible. And in every single case that I've found, the defendant hasn't cited a single case where the mental restraints were anything other than fear or threats of violence. And I can't imagine a way that you could confine someone. Well, Boone itself involved confinement in a way by deception. Boone, Your Honors? Boone. Indeed. And that one ended with the victim having a slit throat. So, you know, I think in this circuit and I think in this circuit's law, if we contrast this circuit, even looking categorically, if we contrast this circuit's law with Autry and Jenkins, those were cases where they both depended on the inveiglement and decoy alternatives, which again are not before the jury. But in our circuit, we know that the inveiglement must be backed up with force. So in that sense, the force is always latent. Inveiglement alone isn't a kidnapping crime. The court said that in Boone. Force is held in reserve only because the kidnapping, the kidnapper's deception is operating successfully. But in order for it to be a kidnapping, there needs to be backed up with that force, that actual or threatened force. And so. Your Honor is right. Boone says there has to be that intent. If the deception initially that resulted in the confinement or the kidnapping fails, then what Boone says is the defendant has to be willing to use force or mental restraint. And Curtis Johnson says mental restraint is not enough. Well, mental restraint in that context is, I think, fear. I think that's putting the victim in fear. Just like putting the victim in fear robbery. If you say, you know, if you leave that room, I'm going to kill you. I'm going to kill your family. I think, too, that one answer to the mental restraint issue might be that there also has to be, and you have to put it in the box with this mental restraint, you have to be held for ransom or reward or otherwise. And I think there is, certainly for reward and ransom, there's an implied threat of force. What about otherwise? The example that Judge Pryor used of not a parent snatching a child, because that's accepted from the statute, but a relative, she detected that and used the relative. And that could happen. You could have a relative who saw that this child was being not taken care of well, or you could even have a woman who couldn't have a baby and wanted a baby real bad and saw this baby and just snatched it, you know. That is not held for ransom or reward. But is it held for otherwise? Or does the otherwise have to be read like ransom and reward? Well, I agree, Your Honor, that we have sort of three parts of kidnapping, the seven forms of taking, the five physical, and the two by seduction, as this court said in Boone. Then we have the holding, which is always going to be the holding element by itself.  And as far as Judge Pryor's question about what about, you know, somebody who takes, you know, a non-parent who takes a child with them, the case law that I'm looking at, for instance, Macklin and Chatwin, Chatwin involved a 15-year-old, for instance, with a mental age of seven. This was the Supreme Court decision. And the Supreme Court said that that wasn't kidnapping, you know, even if that was against the parent's will. In that case, because there was no evidence that it was against the child's will, she could accompany the kidnapper willingly. It was the plural marriage case. And similarly, in Macklin, that involved an adult who had two basically runaway children who were in his company. And in that case, the court said there was insufficient evidence that these victims were being held because there was no showing that they were being held sort of against their wishes. So I think that holding element also, in addition to the fact that we know here that this is one of the five physical takings, there's also that requirement of holding. And under the law of this circuit, there's always going to be either actual or latent force that achieves that holding. Going back to Judge Anderson's question, Curtis Johnson tells us that it has to be violent force. So the Curtis Johnson definition is applying, again, the ACCA, which is a more narrow definition of force. This definition of force encompasses even force against property. And it would be very strange, a very strange reading of the statute if you would say force language is the same under the ACCA, right? A threatened use of force, et cetera. It says physical force in both cases. The ACCA, though, requires that the physical force be used against a person, and under this statute it could be used against a person or property. So the McGuire case actually uses sort of a broader reading of them. And I see my time has expired. Let me ask you one question. Oh, okay. Go ahead, and then I have one more question for you. So the court actually in St. Hubert questioned whether the ACCA's sort of, you know, force capable of causing physical pain or violence, how that would even apply to a force clause that also includes force against property, which obviously isn't capable of causing pain. So I think this force clause is broader than the ACCA because it reaches not just persons but also property. And if it does reach also property, it's very bizarre to say that carrying away an infant wouldn't be the use of force against that infant. That's far more than the de minimis touching, even if we were to apply the Johnson ACCA standard, which, again, I don't think should apply given the broader definition of force here. Thank you, Your Honor. Yeah, Curtis Johnson was a touch on the shoulder, and they said, no, it's got to be more than that. I think you all have more questions. Yeah, I have another question. For a 373 offense, does the government have to prove the actual facts of the crime that was solicited, the kidnapping? I'm sorry. In other words, the crime is solicited but hasn't happened yet. Right. The government wouldn't be able to prove the facts of the kidnapping in that situation, and yet there would still be a 373 offense. Is that right? Right. I think the government needs to establish what was the conduct that was solicited, and does that conduct then have as an element the use of force, distinguishing, for instance, like a mail fraud case where the actual facts of the offense included somebody punching somebody. That's where we get the meaning of that has as an element. It still has to be a crime that requires violence here, kidnapping by seizure, not just a nonviolent federal crime that happened to involve federal conduct. This crime itself, which has to be identified so the jury can decide if he solicited that version of the crime. So here, the version of the crime is kidnapping by one of the five physical takings, and that's the basis of the jury verdict. Well, let me give you an example. What if all the government had here was a Craigslist message from Gillis to somebody else with a photo of the victim and said, here's a picture of the victim, unsuspecting. Will you bring her to my storage unit at such and such an address? What would be the result there? So in that case, I don't think you could necessarily use the conduct solicited to narrow down the versions of the kidnapping statute because you wouldn't know, is he going to bring her there by deceiving her, or is he going to bring her there by, as this defendant wanted, grabbing. So this is a kidnapping by seizure, we can see. But in that hypothetical, we wouldn't know what kind of kidnapping. So maybe you would have to look more broadly and say, in a kidnapping by deception, would that still count? And I think the answer even there, even if those alternatives were before the jury, the answer should still be yes under the law of the circuit. Thank you, Your Honor. Thank you, Your Honors. Three points that I just want to address. First, I'm a bit confounded by the distinction between the five physical and non-physical because there's not a single case in the entire federal court that draws that distinction, and it would be Lye-Chaplin itself. Second, and it's to Judge Anderson's point, yes, we are applying the categorical approach, and confinement clearly includes non-physical force. But even if we were to apply the modified categorical approach, there's no jury anonymity on any physical force. It's not in the jury instructions. It was never brought before the court. So we would have a serious Sixth Amendment problem if we were to follow the argument here because the question of whether federal kidnapping was a crime of violence by the government's own urging of the district court is a question of law. The jury was not even asked that question. So the element under the solicitation statute was not even brought before the jury. So to suggest that this is a conduct question, that we look to the facts and to see, and a jury would determine— Yes. Did they have to decide that? Was that in the jury instructions? Yeah, and our objection was overruled. What we had argued under our JOA argument was that if we argued that as a matter of law, federal kidnapping is not a crime of violence. So under a JOA, and if you take St. Hubert and Peters as well, this is a jurisdictional question that you cannot even bring this charge. If when that objection was overruled, we said, well, if this is a conduct question, then the next logical implication is that question and that element of the solicitation statute, the use or attempted use of physical force, that's the element that's at play here, count two, should have been before the jury. I'm totally confused. On one hand, you say it's a legal question. On the other hand, you're saying the jury didn't decide it. I just got confused here. I'm sorry. I don't mean to be confusing, but the confusion actually stems from the fact that, respectfully, our opponents are making a very inconsistent argument. On the one hand, they are saying that this is a conduct question, but on the other hand, their argument, which is correct, is that this is a question of law. It's a question of law because the categorical approach applies. It is not a conduct question. Your argument really here is the indictment should have been dismissed. It should have never gone to trial. Because kidnapping cannot be a predicate crime under 373. So that's really the bottom line here. You're saying under no way can it always be that, so there should have been a dismissal of the indictment. That's one argument to look at. No, but that's the logical extent of your argument. You cannot convict somebody under 373 for the federal crime of 1201 kidnapping. That's what you're saying here. Yes, Your Honor. And no matter what he did here, that crime will never constitute a predicate crime for the 373 conviction. Yes, but I want to be clear because the— I think that's really where you end up here. I wouldn't disagree with that, but I do want to— You brought it up with the motion to dismiss and really live on a judgment of acquittal no matter what. It's not waived. No way he could be convicted of 373 here. Yes, I just want to be clear about the fact that this is, in the context of a JOA or whether it's jurisdictional, it's clearly before the court and the argument remains— I don't think any of us think you've waived anything. I just think St. Hubert's made that clear. This type of claim, we're not going to say you waived it. If you're saying there's no conduct I could have done, that's what you're saying here. It's a non-offense. Doesn't matter how I did this kidnapping. It doesn't matter whether I strangled somebody, did anything. Because there are plausible ways I could have done it without a threat of violence, I cannot be indicted or convicted for this offense. That's the argument. Yes, Your Honor, and I see there's . . . That's the logical end of the categorical approach. Yes, Your Honor, and I see there's . . . My time is up. Yes, of course. The presiding judge has let me ask this question and let you answer it. I'm going back to Judge Pryor's example of the relative taking the child, not asking for any reward or ransom but just wanting to bring the child up instead of the person who diagnosed it. It seems to me that would not be kidnapping because it's not for ransom or reward or otherwise. In other words, I don't think otherwise would include that hypothetical. I'm not sure if that's entirely correct, and that probably would be more of a jury question in and of itself because the argument clearly could be made that the pleasure brought to the taking relative is the otherwise or the gain that . . . Wouldn't ordinary rules of construction, you read, otherwise to be similar to ransom or reward? Yes, and the principle astutum generis, if my Latin is correct, would suggest that. But the reason that I hesitate is because I'm not sure that that entirely would be outside of the realm of the kidnapping statute because if we're also taking the same principles of statutory construction, we have to look at the full context of kidnapping. The subset of kidnapping offense, and I think we can all agree, is an extremely broad statute. It is meant to cover a wide variety of offenses. I'm fairly confident Congress would want to cover . . . That hypothetical is significant in my mind because there may not be the implied threat of force in that hypothetical, and that's about the only one I can think of. The only other one I can think of is somebody kidnapped somebody and said, if it could be believed, I'm not going to hurt you, I'm not going to hurt anybody, but if you don't do such and such and such and such, I'm going to ruin your business. You know, that is a non-physical . . . I'm a monopolist. I can put you out of business. But that I dismiss as being far-fetched under that doctrine. And I don't think we need to go any far-fetched because I would just bring it right back to Chatwin. We don't even need to get creative at all. Confinement can be against the will of the parent. You take the child. There needs to be absolutely no threat whatsoever. If you want your child back, give me your money. That's an implied threat. Well, the implied threat there is not . . . there's no implied threat there because there's nothing that the jury would have to find, ever, that there was a threat. In fact, the kidnapper could say, I'm going to raise this child as my own. I'm going to tell them they're own. I mean, classic example. If that, then he's not holding the child for ransom or reward. Or otherwise, unless Judge Pryor's hypo falls within the otherwise. And I believe . . . It seems to me to be right doubtful. No, I believe . . . Couldn't the kidnapper say, I'm going to keep the child if you don't do something? No implied threat or express threat to harm the child at all, but simply not to give the child back. Absolutely. That's exactly . . . And that is the very impetus for the kidnapping statute itself. Because you do . . . That's exactly what kidnappers were doing, taking rich infants and saying, we're not going to give you your child back unless you give us money. No threat whatsoever. We'll raise . . . They're holding the child in confinement, though. Yes. You have to have a holding . . . Against the will of the parents, yes. Or against the will of the child. I mean, it can be either one. Yes, Your Honor. So why isn't just the mere holding against will? Holding, confining. I mean, I just think of false imprisonment. It's just . . . I have trouble because having done too many state crimes. Just to say to me, kidnapping is nonviolent. Holding, that is against the will. You admit in this kidnapping statute, they're not going to prosecute somebody. Somebody voluntarily staying there with somebody. The key word right there is voluntary. And when you're dealing with someone who's incapable . . . I agree with that. So hold in the statute has to be against the will of the victim? Or against the will of the parents. And where do I find the will of the parent? It's in Chatwin itself. Chatwin specifically says that. Why would that not holding, even if it's against the will of . . . It's a child who doesn't know any better. Why isn't that a threat of violence? Even if it's against the will of the parent. And you're holding the child. That's physical force, right? No, Your Honor. Okay. The reason that . . . Because . . . Holding is not physical force? Chatwin itself makes that absolutely clear. And I would agree . . . Is that a domestic violence case? I mean, kidnapping? No, Chatwin is a seminal Supreme Court case on the federal kidnapping statute itself. I'm talking about what were the facts in Chatwin. Chatwin is an unlawful marriage case. Yes. Itself. It's not a child case. Well, it's a 15-year-old. But Chatwin is specifically discussing that else. But I will leave . . . And I see I've gone far over my time. But I will leave on this point because where I could see where there might be some equivocation. I'd invite the court to read the Seventh Circuit's decision in Jenkins that addresses exactly this holding element. Where the Seventh Circuit said the holding element under plain error review, so on a much tougher standard of review, said it does not include the use of physical force. And I would be remiss not to point out that the Solicitor General, in filing to the Supreme Court, has not even raised this as an argument. And far be it from me to disagree with the Solicitor General about what constitutes a valid argument for the Supreme Court.  And they're arguing you shouldn't apply the categorical approach to 924C. They're arguing you shouldn't even apply a categorical approach to 924C. So it's . . . Contemporary crimes. If we want to get into what the Solicitor General is arguing in the Supreme Court right now. But I do think . . . Isn't that correct? In some of these cert petitions, they've had a brief in opposition, and the Solicitor General said you shouldn't even be applying the categorical approach. Yes, Your Honor. But still, it is significant that they're not raising this physical force argument. And even in that context, it's the same thing the Third Circuit said. It is impossible to read the statute taking the word element out. So while we're using categorical or modified categorical, the inquiry goes back to elements. The element of the offense. And I will conclude by saying every court to look at this has said, federal kidnapping does not have as an element the use or attempted use or threat of physical force. Thank you for letting me exceed my time in the argument. Thank you very much. Thank you. Thank you. Next case, you can come on up and get situated.